# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GURGEN KHUNAVERDIANTS,
                        *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,
                        *Respondent.*

No. 07-70145

Agency No.
A079-531-856

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
September 8, 2008—San Francisco, California

Filed November 18, 2008

Before: Ronald M. Gould and Carlos T. Bea, Circuit Judges,
and John W. Sedwick,* District Judge.

Opinion by Judge Sedwick

---

*The Honorable John W. Sedwick, Chief Judge, United States District
Court for the District of Alaska, sitting by designation.

15479

**COUNSEL**

Asbet A. Issakhanian, Glendale, California, for the petitioner-appellant.

Aliza B. Alyeshmerni, United States Department of Justice, Civil Division, Washington, D.C., for the respondent-appellee.

## OPINION

SEDWICK, District Judge:

Gurgen Khunaverdiants appeals the Board of Immigration Appeals' ("BIA") decision affirming an immigration judge's ("IJ") denial of his asylum application as time barred. Respondent Michael B. Mukasey, United States Attorney General, argues that under 8 U.S.C. § 1158(a)(3) the court lacks jurisdiction to review the BIA's finding that Khunaverdiants failed to timely file his asylum application. We conclude that we have jurisdiction to review this determination under 8 U.S.C. § 1252(a)(2)(D). We grant the petition and reverse the BIA's decision.

## I.

Gurgen Khunaverdiants, a native and citizen of Iran, entered the United States without inspection. On August 6, 2001, Khunaverdiants filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). In his application, Khunaverdiants stated that he is a married man with two children, and that he left Iran on March 20, 2001. Khunaverdiants indicated that he traveled through the Bazargan border into Turkey, flew from Ankara to Frankfurt, flew to Mexico City, traveled to Tijuana, and crossed the border into San Diego on April 11, 2001, while hidden in a car.

According to his application, Khunaverdiants sought asylum because he is a Christian, he was accused of being a spy and imprisoned in Iran from July 2000 to January 25, 2001, he was beaten and tortured while in prison, a criminal case is pending against him in Islamic court, and he will be imprisoned and tortured if he returns to Iran. In support of his application, Khunaverdiants submitted a personal statement describing the circumstances leading to his imprisonment in July 2000, the beatings during his imprisonment, his release

from prison on January 25, 2001, and his sadness upon learning that his wife sold their house in order to pay prison officials $22,000 to secure his release.

On October 4, 2001, an asylum officer interviewed Khunaverdiants. The asylum officer's report stated that Khunaverdiants "last entered the United States without inspection at San Ysidro, California on or about April 11, 2001." The asylum officer stated that Khunaverdiants did not provide credible testimony as to his travels, manner of entry, and location for the past year, and thus failed to provide clear and convincing evidence that he filed his asylum application within the one-year deadline. The asylum officer concluded that, because Khunaverdiants' application was "untimely filed," he was prohibited from filing for asylum. The former Immigration and Naturalization Service began removal proceedings.

On December 3, 2001, an IJ commenced a hearing on Khunaverdiants' application for asylum, withholding of removal, and relief under CAT. The hearing was continued twice to allow Khunaverdiants to collect documents in support of his application and because his attorney suffered a stroke.

At a hearing before the same IJ on September 3, 2002, Khunaverdiants submitted several documents: 1) a receipt from the Public Prosecutor's Office, Islamic Republic of Iran for $22,000 received as bail for Khunaverdiants on January 26, 2001; 2) a summons directing Khunaverdiants to appear for trial in Tehran on May 23, 2001, on charges of espionage, insulting the Islamic Republic, and failure to observe Islamic principles; and 3) an arrest warrant ordering Khunaverdiants to appear in Disciplinary Court in Tehran on July 25, 2001. Respondent objected to the summons and arrest warrant on the basis of authentication, but did not object to the bail receipt. The IJ set a merits hearing on December 10, 2002.

For reasons not stated in the record, the hearing was continued.

Khunaverdiants received a hearing on the merits before a new IJ on April 1, 2005. At the hearing, Khunaverdiants was represented by new counsel who was fluent in Armenian but not in Farsi. Khunaverdiants, who is of Armenian descent, testified in Farsi with the aid of an interpreter. In his testimony, Khunaverdiants gave dates from both the Persian and Western calendars. The IJ instructed the interpreter to translate dates from the Persian calendar to Western calendar dates.

Khunaverdiants testified that he left Iran on March 19, 2001, arrived in the United States on April 11, 2001, and applied for asylum about two months later. Khunaverdiants' counsel clarified that an attorney who prepared Khunaverdiants' asylum application signed the application on June 25, 2001, Khunaverdiants signed the application on July 25, 2001, and the application was filed on August 6, 2001.

On cross-examination, Khunaverdiants was asked whether he recalled telling the asylum officer that he did not leave Iran on March 20, 2001, but rather in June 2001. Khunaverdiants responded, "It was June 19, not the 20th. That's when I left Iran." When the IJ asked how Khunaverdiants could say that he entered the United States on April 11, 2001, when he testified that he did not leave Iran until June 19, 2001, Khunaverdiants responded, "No. I apologize. I did not say such a thing. Perhaps I made a mistake. I entered America." When asked if he had any "receipts" showing he entered the United States on April 11, 2001, Khunaverdiants testified that he had lost everything.

Khunaverdiants testified that government agents harassed and arrested him numerous times in Iran beginning in 1996 and continuing into 2001. He attested that he was persecuted because he is a Christian and Armenian. He further testified

that he was accused of being a spy and imprisoned in July of 2000, he was held for three to four months, and his wife secured his release by selling their house and paying prison officials $22,000. Khunaverdiants stated that after his release, he was ordered to appear in court in 2001, but fled before his court date.

On cross-examination, government counsel asked Khunaverdiants if he was imprisoned in July 2000 and released "about 90 days" later. Khunaverdiants responded, "Yes." Government counsel then asked if it was approximately October 2000 that Khunaverdiants' wife "paid the bribe." Khunaverdiants replied, "Yes. That is, approximately correct." When asked to explain why his written statement said that he was released from prison on January 25, 2001, Khunaverdiants answered, "Today, I apologize. Perhaps I have forgotten. I cannot remember many things."

At the end of the hearing, the IJ rendered an oral decision out of the parties' presence. In his oral decision, the IJ first designated the following as exhibits: Notice to Appear, I-589 Form, personal statement, identification information, summons asserting that Khunaverdiants is set for trial in Iran on May 23, 2001, Department of State material, and the asylum adjudicator's report. The IJ then proceeded to deny Khunaverdiants' asylum application as time barred and grant his application for withholding of removal as to Iran.

In denying his asylum application, the IJ found that Khunaverdiants had not shown by clear and convincing evidence that he filed his application within one year of arriving in the United States. The IJ noted that Khunaverdiants did not provide any witnesses or "documentation with regard to meeting the one year time bar." He further stated that Khunaverdiants gave "vague and general responses" when asked when, where, and how he came into the United States. The IJ pointed out that Khunaverdiants repeatedly testified that he arrived in the United States on April 11, 2001, but also testi-

fied that he left Iran on June 19, 2001. The IJ did not address the merits of Khunaverdiants' asylum claim.

In granting Khunaverdiants' application for withholding of removal, the IJ stated that Khunaverdiants "reported a series of harassment and arrests commencing in 1996 and continuing through 2001 because of his ethnicity and the fact individuals associated with the Iranian government considered him to be a 'spy,' " reported significant physical mistreatment, and provided a summons showing that his trial was set for May 23, 2001. The IJ concluded based on "consideration of the evidence as a whole, along with the documentary materials of record, and reference to the Department of State *Country Report* that the respondent has made out a claim for withholding of removal on the basis of 'past persecution' and the risk of future persecution as required by law."

Khunaverdiants appealed the IJ's decision denying his asylum application. On appeal, the BIA adopted and affirmed the IJ's decision. The BIA specifically agreed with the IJ's findings and conclusion with respect to the one-year filing deadline for Khunaverdiants' asylum application. The BIA noted that Khunaverdiants initially testified that he departed from Iran on March 19, 2001, but later testified that he left on June 19, 2001. The BIA concluded that "considering the discrepancies in the record pertaining to the date of departure from Iran, we can not find that the [IJ] erred in determining that the respondent failed to establish by clear and convincing evidence that the 1-year filing deadline was met in the instant case." Khunaverdiants timely filed his petition for review.

## II.

Khunaverdiants argues that the IJ and BIA erred in finding that he failed to file his asylum application within one year of his arrival in the United States. Khunaverdiants points out that while the IJ found that he gave vague and general responses when asked when, where, and how he came into the United

States, the IJ credited his testimony in granting withholding of removal.

The government argues that the BIA's determination that Khunaverdiants "failed to establish that he timely filed based on his failure to establish his date of entry" is a factual finding and thus precluded from judicial review under 8 U.S.C. § 1158(a)(3). This court determines its jurisdiction de novo. *Sillah v. Mukasey*, 519 F.3d 1042, 1043 (9th Cir. 2008). We conclude that we have jurisdiction to review the BIA's determination because it involves a question of law.

## A

**[1]** The Immigration and Nationality Act ("INA"), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, requires an asylum application to be "filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). Although 8 U.S.C. § 1158(a)(3) provides that courts have no jurisdiction to review determinations of the Attorney General concerning the one-year filing deadline, "section 106 of the Real ID Act of 2005 restored our jurisdiction over 'constitutional claims or questions of law' raised in a petition for review." *Dhital v. Mukasey*, 532 F.3d 1044, 1049 (9th Cir. 2008) (quoting 8 U.S.C. § 1252(a)(2)(D)). In *Ramadan v. Gonzales*, we held that such questions of law include "not only 'pure' issues of statutory interpretation, but also application of law to undisputed facts, sometimes referred to as mixed questions of law and fact." 479 F.3d 646, 648 (9th Cir. 2007) (per curiam).

In other recent decisions, we have further delineated our jurisdiction over questions of law under 8 U.S.C. § 1252(a)(2)(D). *See, e.g.*, *Ghahremani v. Gonzales*, 498 F.3d 993, 998 (9th Cir. 2007) ("Where the relevant facts are undisputed, creating a mixed question of law and fact, jurisdiction would be proper under our reasoning in *Ramadan*."); *Dhital*, 532 F.3d at 1049 (holding that parties' dispute over the date

when an alien's lawful nonimmigrant status expired was not a factual dispute affecting our jurisdiction to review the BIA's ruling under 8 U.S.C. § 1158(a)(2)(D)); *Sillah*, 519 F.3d at 1043-44 (holding that we had no jurisdiction to review an IJ's timeliness determination because the petitioner's arrival date was not an undisputed fact). In *Sillah*, the IJ found the alien's testimony inadequate to establish his arrival in the United States on May 29, 2002, by clear and convincing evidence, "because he could not remember the name of the person whose fraudulent passport and visa he used and claimed he was never questioned by an immigration officer either upon departing Sierra Leone or upon entering the United States, and because his testimony lacked corroboration." *Sillah,* 519 F.3d at 1043-44.

**[2]** Our holding in *Sillah* might suggest that section 1158(a)(2)(B) requires an alien to establish by clear and convincing evidence his or her exact arrival date. However, the plain language of section 1158(a)(2)(B) requires an alien to demonstrate "by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States," not necessarily the alien's exact date of arrival. There may be some cases where it is necessary to establish an alien's exact arrival date in order to determine whether the alien timely filed; this is not one of them.

**[3]** Here, while Khunaverdiants' departure date is disputed, and thus by inference the date of his arrival in the United States, we have jurisdiction to review the BIA's timeliness determination because any view of the historical facts necessarily establishes that Khunaverdiants filed his asylum application within one year of his arrival. Accordingly, Khunaverdiants' challenge to the BIA's determination that his application is time barred is a mixed question of law and fact. *See Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982) (defining mixed questions as those "in which the historical facts are admitted or established, the rule of law is

undisputed, and the issue is whether the facts satisfy the statutory standard").

**[4]** Khunaverdiants testified consistently that he arrived in the United States on April 11, 2001. He initially testified that he left Iran on March 19, 2001, but on cross-examination testified that he left Iran on June 19, 2001. In either event, his application was timely because he filed it on August 6, 2001. The IJ's decision reflects the discrepancy respecting departure dates, but ignores the ineluctable conclusion that whether Khunaverdiants left Iran in March or June 2001, he arrived in the United States less than one year before he filed his application.

**[5]** In addition, Khunaverdiants testified that he was subjected to harassment and arrests in Iran continuing into 2001. The IJ credited Khunaverdiants' testimony when awarding withholding of removal. Because the IJ granted Khunaverdiants withholding of removal based on events in Iran which continued into 2001, it is an undisputed historical fact that Khunaverdiants was in the United States less than one year before filing his application on August 6, 2001.

**[6]** It is also undisputed that Khunaverdiants was released from prison in Iran less than one year before filing his asylum application. Khunaverdiants testified that he was imprisoned in Iran until January 25, 2001, which is consistent with the receipt for the release funds paid by his wife. On cross-examination, however, he testified that it was "approximately correct" that his wife "paid the bribe" in October 2000, suggesting that he was released from prison in October 2000. Whichever release date is correct, Khunaverdiants was in Iran less than one year before he filed his application on August 6, 2001. Because the issue in this case involves application of a statute to the undisputed historical fact that Khunaverdiants arrived in the United States less than one year before filing his asylum application, we have jurisdiction to review the BIA's timeliness determination. *Ramadan*, 479 F.3d at 654.

**B**

Having established jurisdiction, we turn to the merits of Khunaverdiants' argument that the BIA erred in finding that he failed to timely file his asylum application. We review the agency's application of legal standards de novo. *Morales v. Gonzales*, 478 F.3d 972, 983 (9th Cir. 2007).

**[7]** Section 1158(a)(2)(B) requires an asylum applicant to provide clear and convincing evidence that his application was filed within one year of his arrival in the United States. The BIA concluded that, based on the discrepancies in the record concerning Khunaverdiants' date of departure from Iran, it could not find that the IJ erred in determining that Khunaverdiants failed to establish by clear and convincing evidence that he met the one-year filing deadline.

**[8]** We hold that the BIA erred in concluding that proof of an exact departure date was necessary when other clear and convincing evidence established that Khunaverdiants necessarily filed his asylum application less than one year after arriving in the United States. Khunaverdiants provided unrefuted testimony that he was subjected to harassment and arrests in Iran commencing in 1996 and continuing into 2001. Moreover, the IJ credited Khunaverdiants' testimony in granting his claim for withholding of removal. "The law in our circuit is well settled that 'an alien's testimony, if unrefuted and credible, direct and specific, is sufficient to establish the facts testified without the need for any corroboration.' " *Kaur v. Ashcroft*, 379 F.3d 876, 889-90 (9th Cir. 2004) (quoting *Ladha v. INS*, 215 F.3d 889, 901 (9th Cir. 2000)). Khunaverdiants also provided a summons directing him to appear for trial in Tehran on May 23, 2001, which the IJ credited in granting Khunaverdiants' claim for withholding of removal.

In addition, Khunaverdiants provided clear and convincing evidence that he was released from prison in Iran less than one year before filing his asylum application. In his applica-

tion, personal statement, and direct testimony, Khunaverdiants consistently attested that he was imprisoned in Iran in July 2000, and released from prison on January 25, 2001. Khunaverdiants also provided a receipt for $22,000 in bail paid by his wife to the Public Prosecutor's Office in Iran on January 26, 2001. Respondent did not challenge the authenticity of the bail receipt.

On cross-examination, government counsel suggested it was actually October 2000 when Khunaverdiants' wife paid "the bribe." Khunaverdiants responded, "That is approximately correct." Even if Khunaverdiants was released from prison in October 2000, he could not have arrived in the United States more than ten months prior to filing his application on August 6, 2001.

**[9]** We conclude that Khunaverdiants established by clear and convincing evidence that he filed his asylum application within one year of arriving in the United States. Because the BIA erred in ruling that Khunaverdiants' asylum application was time barred, we grant the petition for review.

## C

**[10]** We must next determine whether it is necessary to remand to the BIA to consider the merits of Khunaverdiants' asylum claim. We conclude that it is not. The IJ ruled that Khunaverdiants was entitled to withholding of removal "on the basis of 'past persecution' and the risk of future persecution as required by law." An applicant for withholding of removal must demonstrate "that it is 'more likely than not' that he will be persecuted on account of his religion were he to return." *Hakeem v. INS*, 273 F.3d 812, 816 (9th Cir. 2001). "The standard for withholding of removal is more stringent than the well-founded fear standard of asylum in that it requires the applicant to show a greater likelihood of persecution." *Id.*

**[11]** Because Khunaverdiants established a clear probability of persecution, it follows that he is also eligible for asylum under the less stringent well-founded fear of persecution standard. *Gomez-Saballos v. INS*, 79 F.3d 912, 918 (9th Cir. 1996). Asylum provides benefits that are not attendant upon a grant of withholding of removal, such as the opportunity to apply for permanent resident status under 8 U.S.C. § 1159(b), *id.* at 918 n.9, and to request asylum or "following-to-join" benefits for a spouse or child, 8 C.F.R. § 1208.21.

**[12]** Our conclusion that Khunaverdiants is eligible for asylum does not automatically entitle him to asylum. Under 8 U.S.C. § 1158(b)(1), the Attorney General has discretionary authority to grant asylum. Accordingly, we remand to the Attorney General to make a discretionary decision regarding whether to grant asylum to Khunaverdiants. *Jahed v. INS*, 356 F.3d 991, 1001 (9th Cir. 2004).

### III.

Based on the foregoing, Khunaverdiants' petition for review is **GRANTED**, and this matter is **REMANDED** for the exercise of the Attorney General's discretion with respect to Khunaverdiants' asylum claim.