**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AZRA TASLIMI,

*Petitioner,*

v.

ERIC H. HOLDER, Jr., Attorney
General,

*Respondent.*

No. 05-71006

Agency No.
A096-360-113

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 10, 2008—Pasadena, California

Filed January 4, 2010

Before: Harry Pregerson, Dorothy W. Nelson and
David R. Thompson, Circuit Judges.

Opinion by Judge Pregerson

1

---

## COUNSEL

Haleh Mansouri, Esq., Los Angeles, California, for the petitioner.

Stuart Nickum, Department of Justice Trial Attorney, Washington, DC, for the respondent.

---

## OPINION

PREGERSON, Circuit Judge:

Azra Taslimi ("Taslimi") petitions for review of a decision of the Board of Immigration Appeals (the "BIA") finding her statutorily ineligible for asylum. We grant the petition for review, reverse and remand to the BIA to determine whether, in an exercise of discretion, Taslimi merits a grant of asylum under 8 U.S.C. § 1158(b).

### FACTS AND PROCEDURAL HISTORY[1]

---

[1]The IJ expressly found Taslimi and the other witnesses who testified at Taslimi's hearing to be credible. We take those witnesses' factual contentions as true. *Navas v. INS*, 217 F.3d 646, 652 n.3 (9th Cir. 2000) ("Where the BIA does not make an explicit adverse credibility finding, we must assume that the applicant's factual contentions are true.") (citing *Gaya Prasad v. INS*, 101 F.3d 614, 616 (9th Cir. 1996)).

Taslimi is a native and citizen of Iran. She entered the United States on a visitor visa on or about October 3, 1992, with authorization to remain until October 3, 1993. She has not left the United States since her entry.

Before coming to the United States, Taslimi was Muslim. In the United States, however, Taslimi began attending Christian churches. Beginning in June 2002, Taslimi attended prayer services and Bible study at the New Beginnings Christian Fellowship Church of God ("New Beginnings"). On September 5, 2002, Taslimi approached New Beginnings' pastor and converted to Christianity. Two members of the church and the pastor witnessed Taslimi's conversion ceremony.

Following her conversion, Taslimi had a conversation with the pastor of New Beginnings, Pastor Ritchie, in which he encouraged her to legalize her status and helped her find an attorney. Before learning of asylum, Taslimi did not know that she might apply for legal status based on her religious conversion. Taslimi discussed her legal status with others, and learned of asylum in March or April of 2003. She applied for asylum on April 2, 2003, a few days short of seven months after her religious conversion.

Taslimi did not apply for asylum immediately after her conversion because she wanted to be sure that it was going to be a life-long decision.[2] Pastor Ritchie testified that he viewed Taslimi's period of waiting after her conversion and before applying for asylum to be healthy, because it "demonstrated the genuineness of her commitment."

An asylum officer referred Taslimi's application for asylum to immigration court for adjudication. During the hearing on

[2]When asked why she waited to apply for asylum after her conversion ceremony and after she learned of asylum, Taslimi explained: "I was seeking to find myself whether I wanted to remain in this [path] or not. I was contemplating on that."

the merits of her asylum application in immigration court, Taslimi explained that she would fear for her life if she were removed to Iran, but that she is committed to practicing Christianity, even if removed. In addition to Taslimi and Pastor Ritchie, two members of the New Beginnings Church testified at the hearing on Taslimi's behalf.[3]

Prior to rendering his oral decision, the IJ indicated that he intended to grant Taslimi withholding of removal and protection under the Convention Against Torture, but to deny Taslimi's application for asylum because she failed to apply for asylum within a reasonable period following her religious conversion. In light of his intent to grant withholding of removal, the IJ asked Taslimi's counsel whether she wanted to reconsider the request for voluntary departure. After briefly going off the record, Taslimi's counsel withdrew the request for voluntary departure and the IJ rendered his oral decision.

The IJ found that Taslimi was eligible for withholding of removal pursuant to 8 U.S.C. § 1231(b)(3), because Taslimi showed that it was more likely than not that her life or freedom would be threatened in Iran on account of her religion. The IJ also found Taslimi eligible for protection under the Convention Against Torture, finding Taslimi met her burden of establishing that it was more likely than not that she would be tortured if returned to Iran.

The IJ denied Taslimi's application for asylum, finding it to be time-barred. Taslimi converted to Christianity on September 5, 2002, and filed her asylum application on April 2, 2003. The IJ found that Taslimi's September 5, 2002, conversion constituted "changed circumstances" materially affecting her eligibility for asylum, which would permit her to file for asylum more than one year after her entry into the United States. *See* 8 C.F.R. § 208.4(a)(2). The IJ further found, how-

---

[3]New Beginnings Church also submitted a petition, signed by ninety-one people, attesting to Taslimi's dedication to the church.

ever, that Taslimi failed to apply for asylum within a "reason-able period" following the change in circumstances. *See* 8 C.F.R. § 208(a)(4)(ii).[4] The IJ reasoned that Taslimi had lived in the United States since 1992 and had "ample opportunity to avail herself of resources regarding the laws of asylum." The IJ reasoned that Taslimi did not testify that she was unaware of asylum during the period between her conversion and filing for asylum, when Taslimi was waiting to see whether her conversion would hold. The IJ observed that the Pastor "did not testify that [Taslimi] discussed asylum with him at all. The Pastor only discussed the need to resolve [Taslimi's] immigration problem shortly before the baptism, but never dissuaded her or informed her of the asylum proce-dure." Finding no extenuating or special circumstances that would make the delay in filing for asylum reasonable, the IJ found that Taslimi failed to show that she qualified for an exception to the one-year filing deadline. Accordingly, the IJ found Taslimi statutorily ineligible for asylum. He further ordered her removed from the United States before granting her withholding of removal and protection under the Conven-tion Against Torture. The BIA summarily affirmed the IJ's decision pursuant to 8 C.F.R. § 1003.1(e)(4).

Taslimi timely petitioned this court for review. On appeal, she argues that: (1) the IJ erred by concluding that she failed to file her asylum application within a reasonable period of time following changed circumstances affecting her eligibility for asylum; and (2) the IJ erred by concluding that he was required to enter an order of removal before granting Taslimi withholding of removal.

---

[4]8 C.F.R. § 208.4(a)(4)(ii) reads in pertinent part: "The applicant shall file an asylum application within a reasonable period given those 'changed circumstances.' "

Taslimi converted to Christianity on September 5, 2002, and filed for asylum on April 2, 2003. Although the IJ referred to this period as being "two or three days short of six months," it is clearly a period just shy of seven months. Neither party disputes the IJ's factual finding, and we do not find it important to our analysis.

## DISCUSSION

### I.

**[1]** Asylum-seekers have one year from the time of their entry into the United States to file an application for asylum. 8 U.S.C. § 1158(a)(2)(B). This one year filing deadline is subject to two statutory exceptions. An asylum seeker may apply for asylum even if it is more than one year after that person's entry by demonstrating "either the existence of *changed circumstances* which materially affect the applicant's eligibility for asylum or *extraordinary circumstances* relating to the delay in filing an application." 8 U.S.C. § 1158(a)(2)(D) (emphases added).

**[2]** An applicant demonstrating changed circumstances must further demonstrate that the application was filed "within a reasonable period given those 'changed circumstances.' " 8 C.F.R. § 208.4(a)(4)(ii). Similarly, an applicant demonstrating "extraordinary circumstances" must show that the application was filed "within a reasonable period given those circumstances." 8 C.F.R. § 208.4(a)(5).

The IJ found, and the government does not dispute, that Taslimi's conversion to Christianity constituted changed circumstances within the meaning of 8 U.S.C. § 1158(a)(2)(B). Taslimi disputes the IJ's finding that she failed to file her application for asylum within a "reasonable period" given those changed circumstances.

### II.

We must first consider whether we have jurisdiction to review the IJ's determination that Taslimi failed to file her application within a "reasonable period" given her changed circumstances. "[W]e 'have jurisdiction to determine whether jurisdiction exists.' " *Flores-Miramontes v. INS*, 212 F.3d 1133, 1135 (9th Cir. 2000) (quoting *Aragon-Ayon v. INS*, 206

F.3d 847, 849 (9th Cir. 2000)). We review our own jurisdiction de novo. *Ruiz-Morales v. Ashcroft*, 361 F.3d 1219, 1221 (9th Cir. 2004) (citing *Rosales-Rosales v. Ashcroft*, 347 F.3d 714, 716 (9th Cir. 2003)). Based on our decisions in *Ramadan v. Gonzales*, 479 F.3d 646 (9th Cir. 2007) (per curiam) and *Husyev v. Mukasey*, 528 F.3d 1172 (9th Cir. 2008), we hold that we have jurisdiction to consider this question.

8 U.S.C. § 1158(a)(3) provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General" regarding changed or extraordinary circumstances. Section 106 of the REAL ID Act of 2005, however, restored jurisdiction over "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." Pub. L. No. 109-13, Div. B (2005), *codified at* 8 U.S.C. § 1252(a)(2)(D).

**[3]** Accordingly, even though 8 U.S.C. § 1158(a)(3) purports to strip our jurisdiction over determinations related to changed or extraordinary circumstances, 8 U.S.C. § 1252(a)(2)(D) restored jurisdiction to the extent that determinations concerning changed or extraordinary circumstances involve constitutional claims or questions of law.

In *Ramadan* we held that " 'questions of law,' as the phrase is used in [§ 1252(a)(2)(D)], extends to questions involving the application of statutes or regulations to undisputed facts, sometimes referred to as mixed questions of fact and law." 479 F.3d at 650. In that case we held that we have jurisdiction to review as a mixed question of fact and law an IJ's determination that the petitioner failed to demonstrate "changed circumstances" allowing her to file for asylum more than one year after her arrival in the United States. 479 F.3d at 650.[5]

---

[5]In *Ramadan*, as in Taslimi's case, the BIA summarily affirmed the IJ's decision without an opinion. *Ramadan*, 479 F.3d at 649. The IJ's decision is the final agency determination, 8 C.F.R. 1003.1(e), and we review it directly. *Lanza v. Ashcroft*, 389 F.3d 917, 919 (9th Cir. 2004).

The factual basis of Ramadan's claim was undisputed, and our court "only review[ed] whether the IJ appropriately determined that the facts did not constitute 'changed circumstances' as defined by immigration law." *Id.* at 657. The issue here, whether we have jurisdiction to consider the further question of whether an asylum applicant has filed an application within a "reasonable period" following those changed circumstances, was not presented in *Ramadan*.

In *Husyev*, we considered the parallel exception to the one year deadline of "extraordinary circumstances." 528 F.3d at 1181. In that case, the petitioner filed an asylum application 364 days after the expiration of his legal status. *Id.* at 1178. One example provided by regulation of extraordinary circumstances justifying filing an application more than one year after entry is where an applicant maintains lawful status "until a reasonable period before the filing of the asylum application." 8 C.F.R. § 208.4(a)(5)(iv). The IJ found that the petitioner failed to show that he filed his asylum application within a "reasonable period" after the expiration of his lawful status. *Husyev*, 528 F.3d at 1178. The facts in *Husyev* were undisputed, and the issue our court considered was "how the statute and regulation apply to those facts." *Id.* at 1179. Relying on *Ramadan*, we held that we had jurisdiction to review the IJ's determination that the petitioner failed to show that he filed his asylum application within a "reasonable period" following the expiration of his legal status. *Id.* at 1179. *See also Dhital v. Mukasey*, 532 F.3d 1044, 1049 (9th Cir. 2008) (holding that jurisdiction exists to review the application of the extraordinary circumstances exception to undisputed facts).

**[4]** Based on our holdings in *Ramadan* and *Husyev*, we hold that we have jurisdiction to consider whether Taslimi filed her asylum application within a "reasonable period" given the changed circumstances presented by her religious conversion. As in *Ramadan* and *Husyev*, the facts of Taslimi's

case are not in dispute, and we review the application of the statute and regulations to those undisputed facts.

The government argues that we do not have jurisdiction because there are no meaningful standards by which the court can judge whether the delay following changed circumstances is reasonable. We disagree.

In *Husyev*, the government also argued that "the nature of the determination of 'extraordinary circumstances' is so lacking in measurable standards that it presents one of the 'rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.' " *Husyev*, 528 F.3d at 1180 (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (internal quotations omitted)). We rejected that argument, finding that the pertinent regulations "provide standards sufficient to permit meaningful review." *Id.* at 1181. We observed that the regulations contain a non-exhaustive list of potential extraordinary circumstances which "provides a partial adjudicative standard in and of itself." *Id.* We also considered the explanations given by the Immigration and Naturalization Service and the Executive Office for Immigration Review in the Preamble to the permanent regulations. *Id.* Considering the language of the regulations and the agency's explanation in the prefatory language of the Preamble, we reasoned that "the agency has taken pains to articulate the 'reasonable period' standard that applies to petitioners whose temporary nonimmigrant status has expired." *Id.*

**[5]** Here, as in *Husyev*, we find that the statutory and regulatory framework and the agency's pronouncements provide a "meaningful standard" by which we may review whether a petitioner has filed for asylum within a "reasonable period" given the existence of changed circumstances. The regulations themselves provide a non-exhaustive list of potential changed circumstances. 8 C.F.R. § 208.4(a)(4)(i)(A)-(C). Important for our purposes here, the regulation refines the standard by which the "reasonable period" may be evaluated by requiring

an adjudicator to consider an applicant's delayed awareness of changed circumstances in determining what constitutes a "reasonable period" of delay. 8 C.F.R. § 208.4(a)(4)(ii).

In 2000, the agency promulgated permanent regulations implementing the changed and extraordinary circumstances exceptions to the one-year bar. 65 Fed. Reg. 76121-01 (Dec. 6, 2000). The Preamble to the permanent regulations shows that the agency sought to clarify in the permanent regulations the standards for evaluating the reasonableness of a delay in filing for asylum following changed circumstances. 65 Fed. Reg. 76121-01 at 76124. Observing that there was some confusion regarding "the amount of additional time an applicant should receive in order to file an application when it has been determined that a changed or extraordinary circumstance is present in a particular case," the Preamble noted that "the finding of changed or extraordinary circumstances justifies the tardiness being excused to the extent necessary to allow the alien a reasonable amount of time to submit the application." *Id.*[6] The Preamble further noted that while "there may be some rare cases in which a delay of one year or more may be justified because of particular circumstances, in most cases such a delay would not be justified." *Id.*

**[6]** We conclude that the language provided by the statute and regulations is sufficient to guide our review of whether an applicant filed an application within a reasonable period following changed circumstances. Whether an asylum applicant filed for asylum within a "reasonable period" following changed circumstances affecting her eligibility for asylum is not one of those "rare instances" in which there is no law to apply. *Heckler*, 470 U.S. at 830. We have jurisdiction to review whether an asylum applicant has filed for asylum

---

[6]We note that this "prefatory language to a regulation, although often informative, does not have the same binding force as do the regulations themselves." *Wakkary v. Holder*, 558 F.3d 1049, 1058 n.4 (9th Cir. 2009).

within a reasonable period after changed circumstances materially affect the applicant's eligibility for asylum.

### III.

We turn now to the IJ's ruling in this case. The IJ found that Taslimi's religious conversion constituted changed circumstances materially affecting her eligibility for asylum, but that she failed to apply for asylum within a reasonable period given her changed circumstances. We are compelled to conclude that Taslimi applied for asylum within a reasonable period of time.

**[7]** The final regulations were carefully shaped to take religious conversion into account as a potential changed circumstance, and to highlight the subjective nature of such a change. For instance, prior to the 2000 amendments, the rule provided as one example of changed circumstances "changes in *objective* circumstances relating to the applicant in the United States . . . that create a reasonable possibility that applicant may qualify for asylum." 8 C.F.R. § 208.4(a)(4)(i)(B) (1999) (emphasis added). As the Preamble to the final regulations explained, "[t]he modifier 'objective' was removed to avoid confusion in cases where, for example, the changed circumstance relates to a subjective choice an applicant has made, *such as a religious conversion* or adoption of political views." 65 Fed. Reg. 76121-01 at 76123 (emphasis added). "Additionally, the Department [of Justice] eliminated the requirement that the changed circumstances occur within the United States, because there may be situations in which the changed circumstances, *such as religious conversion*, took place outside the United States, but not in the applicant's home country." *Id.* (emphasis added).

**[8]** Judging this case on its individual facts, as we must, we conclude that Taslimi offered substantial credible evidence establishing that her subjective religious conversion was a process that *began* on the date of her conversion ceremony,

but took some time to for her to incorporate into her life. Taslimi applied for asylum within a reasonable period after her conversion. Taslimi submitted substantial evidence concerning the importance in her church's religious tradition of allowing time for spiritual growth. Pastor Ritchie testified: "[T]he whole perspective is that, you know conversion is instantaneous but growth is a [process], so . . . that day [of Taslimi's conversion] was the start of . . . something new." Taslimi testified that she waited to be certain that her conversion was going to be a lifelong commitment, stating: "I was seeking to find myself whether I wanted to remain in this [path] or not. I was contemplating on that." That period of subjective contemplation was consistent with both the advice of her pastor, who advised her to follow the law but to allow herself time to consider the genuineness of her commitment to Christianity, and the federal regulation, which required her to file for asylum within a "reasonable period" after her subjective, religious conversion.

In finding that Taslimi failed to apply for asylum within a reasonable period following her changed circumstances, the IJ reasoned that Taslimi had lived in the United States since 1992 and had "ample opportunity" to learn about asylum law.[7] He further reasoned that "[Taslimi] never testified that she did not know about asylum during the six month time frame, and the Pastor did not testify that she discussed asylum with him at all.

[9] The IJ's analysis misses the mark. Regardless of when Taslimi learned of asylum, she testified credibly that her conversion ceremony marked the beginning of a process of spiri-

---

[7]We note, however, that the requirement that an applicant file for asylum within one year after her entry was not the law when Taslimi entered the country, and only became the law in 1996. *Khunaverdiants v. Mukasey*, 548 F.3d 760, 765 (9th Cir. 2008). Had Taslimi sought to learn about asylum law prior to October 3, 1993 (when her lawful status in the United States expired), she would not have learned about the one-year filing deadline.

tual growth in her life. By the IJ's reasoning, Taslimi should have applied for asylum sooner after her conversion ceremony, in spite of Taslimi's credible testimony that she waited to apply for asylum in order to be sure that her conversion was permanent. Even if there were solid evidence that Taslimi knew about the one-year filing deadline for asylum applications when she converted to Christianity, filing for asylum immediately after her conversion to ensure the timeliness of her application might have cast doubt upon the sincerity of her faith. On the other hand, by waiting—as she credibly testified that she did—to be sure of the sincerity of her faith, she ran the risk that the IJ would find that the delay was unreasonable, and deny her application for asylum. Taslimi should not have been forced into this untenable position.

**[10]** Taslimi testified credibly as to the reasons for her delay. Her pastor also testified to the propriety, in his view and in his understanding of his religious tradition, of Taslimi's waiting to test the genuineness of her commitment to Christianity, and his personal observations that it was a process of a few months for "the realization of what happened . . . to take hold in [Taslimi's] life . . . ." Applying the statute and regulations to the undisputed facts of this case, we hold that substantial evidence does not support the IJ's determination that the delay between Taslimi's conversion ceremony and her filing of her application for asylum was unreasonable.

### IV.

Taslimi next argues that the IJ improperly deprived her of the privilege of voluntary departure when he entered an order of removal before he granted her the relief of withholding of removal and protection under the Convention Against Torture. There is no need to reach this issue because we remand for consideration of Taslimi's asylum application.

Under the BIA's precedential opinion *Matter of I-S- and C-S-*, "when an Immigration Judge decides to grant withhold-

ing of removal, an explicit order of removal must be included in the decision." 24 I. & N. Dec. 432, 434 (BIA 2008). That opinion expressly notes, however, that it only applies "where . . . an Immigration Judge grants only withholding of removal, unaccompanied by a grant of asylum. In instances in which an Immigration Judge grants both asylum and withholding of removal, an order of removal would not normally be required, as an asylum grant does not require an order of removal." *Id.* at n.3.

**[11]** On remand, the agency will consider Taslimi's application for asylum. Should the agency determine that, in its discretion, Taslimi merits a grant of asylum, then under *Matter of I-S- and C-S-*, an order of removal would no longer be necessary.

## CONCLUSION

**[12]** Having satisfied the stricter standard for withholding of removal, Taslimi necessarily satisfied the standard for showing eligibility for asylum. We remand to the BIA to determine whether in its discretion Taslimi merits a grant of asylum. *See Fedunyak v. Gonzales*, 477 F.3d 1126, 1131 (9th Cir. 2007).

**REVERSED and REMANDED.**