**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CONG XIAN LIN,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney General,

*Respondent.*

No. 06-73377

Agency No.
A079-059-581

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 6, 2010*
Pasadena, California

Filed June 28, 2010

Before: Diarmuid F. O'Scannlain and Richard C. Tallman,
Circuit Judges, and Frederic Block,
Senior District Judge.**

Per Curiam Opinion;
Concurrence by Judge O'Scannlain

---

*The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Frederic Block, Senior United States District Judge for the Eastern District of New York, sitting by designation.

**COUNSEL**

Cong Xian Lin, pro se, Monterey Park, California, filed the brief for the petitioner.

Donald A. Couvillon, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., filed the brief for the respondent. Peter D. Keisler, Assistant Attorney General, Civil Division, Department of Justice, and Linda S. Wendtland, Assistant Director, Office of Immigration Litigation, Civil Division, Department of Justice, Washington, D.C., were also on the brief.

## OPINION

PER CURIAM:

We must decide whether substantial evidence supports the Board of Immigration Appeals' denial of admissibility to a Chinese citizen who gave assistance to a Falun Gong practitioner.

### I

### A

Cong Xian Lin, a native and citizen of China, worked as a cleric at a Daoist temple in Jiangkou in Putian County in Fujian Province. In September 2001, a Falun Gong practitioner fleeing Chinese authorities sought refuge in Lin's temple and asked for assistance in escaping to Taiwan. Lin joined other clerics in pooling funds and arranging for a boat to take the man to Taiwan, even though he knew that such assistance violated Chinese law.

Several days later, Chinese authorities arrived at the temple and arrested two of the clerics. According to Lin, the temple had never had problems in the past, but Chinese authorities arrested the clerics because they helped the Falun Gong practitioner to escape. Lin avoided arrest because he was in a nearby village performing religious services. Police closed the temple and looked for Lin later that day at his home. Lin fled Jiangkou because of these events. He traveled within China until he obtained a Taiwanese passport in June 2002, at which point he claims he flew to Spain and then on to the United States.

A U.S. Border Patrol officer arrested Lin on August 23, 2002, in Mobile, Alabama. The then-Immigration and Naturalization Service ("INS") issued a notice to appear, alleging

that Lin entered the United States illegally, and that he was subject to removal.

## B

Lin applied for asylum and requested withholding of removal under the Immigration and Nationality Act ("INA") and protection under the Convention Against Torture ("CAT") on March 24, 2003. The Immigration Judge ("IJ") denied Lin's application for asylum as untimely. In the IJ's view, Lin had not established by clear and convincing evidence that he had applied for asylum within one year of his date of arrival in the United States, as required for asylum eligibility, because he provided several different dates and two different locations of his arrival.[1] The IJ also denied Lin's requests for withholding of removal, CAT relief, and voluntary departure. The IJ held that Lin had not established a likelihood that he would be subject to persecution, as required for withholding of removal, or a likelihood that he would be subject to torture, as required for CAT relief, because Chinese authorities merely searched for him and did so only on account of his assistance to the Falun Gong practitioner, not his political opinion or religion.

The Board of Immigration Appeals ("BIA") adopted and

---

[1]Lin told the Border Patrol agent who arrested him that he entered the United States on July 10, 2002, at Los Angeles International Airport. He admitted the same fact twice in filings. But Lin's asylum application states that Lin entered the United States on June 15, 2002, at Miami, Florida.

The exact date Lin departed from China is also unclear. Lin's asylum application and initial testimony represent that he left China on June 2, 2002. But Lin later testified he left China on June 8, 2002. He also stated, contrary to all of his prior statements, that he arrived in Miami on October 12, 2002, after staying in Spain for four days. When confronted with the fact that the amount of time between June and October is greater than four days, Lin stated that he must have arrived on June 12, 2002, and denied stating that he arrived on October 12, 2002.

affirmed the decision of the IJ. Lin timely petitioned for review.

## II

Lin first argues that denial of his asylum application is not supported by the record. The government responds that we lack jurisdiction to review such denial.

### A

**[1]** The Immigration and Nationality Act ("INA"), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, requires that an asylum applicant "demonstrate[ ] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). Although 8 U.S.C. § 1158(a)(3) provides that "no court shall have jurisdiction to review any determination" concerning the one year filing deadline, section 106 of the REAL ID Act of 2005 restored our jurisdiction over "constitutional claims or questions of law" raised in a petition for review. *Id.* § 1252(a)(2)(D); *see Tamang v. Holder*, 598 F.3d 1083, 1088 (9th Cir. 2010); *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1124 (9th Cir. 2006) (en banc). In *Ramadan v. Gonzales*, 479 F.3d 646 (9th Cir. 2007) (per curiam), we held that "questions of law" include "not only 'pure' issues of statutory interpretation, but also application of law to undisputed facts, sometimes referred to as mixed questions of law and fact." *Id.* at 648.

**[2]** Applying the principle of *Ramadan*, we held in *Khunaverdiants v. Mukasey*, 548 F.3d 760 (9th Cir. 2008), that we nevertheless have jurisdiction over the determination whether an alien applied for asylum within one year of arriving in the United States because the underlying facts are undisputed. *Id.* at 765-66. We further held that the facts are undisputed, even if the exact departure and arrival dates are

unclear, if "any view of the historical facts necessarily establishes that [the alien] filed his asylum application within one year of arrival." *Id.* at 765. In *Khunaverdiants*, all of the dates to which the alien testified regarding his arrival and departure fell within four months of his application for asylum, and the IJ credited the alien's testimony that he had been persecuted and released from prison in Iran less than one year before he applied for asylum. *Id.* at 766. We concluded, therefore, that it was an "undisputed historical fact that [the alien] arrived in the United States less than one year before filing his asylum application," and proceeded to exercise jurisdiction to review the BIA's timeliness determination. *Id.*

**[3]** This case is indistinguishable from *Khunaverdiants*. Under "any view of the historical facts," Lin filed his application within one year of arrival. Although Lin, like Khunaverdiants, testified to different dates of departure and arrival, *see supra* note 1, all of the dates fall within one year of his application for asylum on March 24, 2003. Furthermore, also like Khunaverdiants, Lin testified that he hid in China until June 2002, and his testimony was not discredited by the IJ. Because the underlying fact that Lin arrived in the United States less than one year before filing his asylum application is undisputed, we have jurisdiction to review the determination that Lin did not timely file his asylum application.

B

**[4]** As to the merits of that determination, section 1158(a)(2)(B) requires that an asylum applicant provide clear and convincing evidence that he filed for asylum within one year of arriving in the United States. The IJ held that Lin did not meet this burden because he testified to different arrival dates and locations and failed to provide any documentary evidence supporting them.

**[5]** In *Khunaverdiants*, however, we held that "the BIA erred in concluding that proof of an exact departure date was

necessary when other clear and convincing evidence established that [the alien] necessarily filed his asylum application less than one year after arriving in the United States." 548 F.3d at 766. Once again, this case is indistinguishable from *Khunaverdiants*. As in *Khunaverdiants*, the IJ did not discredit Lin's testimony that he hid in China until June 2002, less than one year before he applied for asylum on March 24, 2003. It does not matter that Lin, unlike the alien in *Khunaverdiants*, did not produce documentary evidence supporting his testimony. 548 F.3d at 766-67. Under our circuit precedent, Lin's testimony is enough to establish a fact to which he testified "without the need for any corroboration." *Id.* at 766 (quoting *Kaur v. Ashcroft*, 379 F.3d 876, 889-90 (9th Cir. 2004)). We conclude that Lin established by clear and convincing evidence that he filed his asylum application within one year of arriving in the United States and that the case must be remanded to the BIA for consideration of his asylum claim on the merits. *See Gonzales v. Thomas*, 547 U.S. 183, 186 (2006) (per curiam).

## III

Lin next argues that denial of withholding of removal and CAT relief are not supported by the record.

## A

**[6]** To establish eligibility for withholding of removal, an alien must show that it is "more likely than not" that he would be subject to persecution on account of race, religion, nationality, membership in a particular social group, or political opinion if he returns to his native country. *Al-Harbi v. INS*, 242 F.3d 882, 888 (9th Cir. 2001); *see INS v. Cardoza-Fonseca*, 480 U.S. 421, 429 (1987). The IJ held that Lin had not established a likelihood that he would be subject to persecution because Chinese authorities merely searched for him only on account of his assistance to the Falun Gong practitioner, not his political opinion or religion. Lin argues that

Chinese authorities searched for and would have persecuted him because he assisted a Falun Gong practitioner, a member of a persecuted minority, as required by his Daoist religion, which commands aid to others.

**[7]** Ordinary prosecution for criminal activity is not persecution "on account of" a protected ground. *Dinu v. Ashcroft*, 372 F.3d 1041, 1043-44 (9th Cir. 2004); *Chanco v. INS*, 82 F.3d 298, 301 (9th Cir. 1996). Here, substantial evidence supports the IJ's conclusion. Lin testified that Chinese authorities sought him because he assisted the Falun Gong fugitive in violation of Chinese law. Notably, Lin never testified that Chinese authorities sought him because they thought he was a Falun Gong practitioner himself or because of his Daoist beliefs. Although Lin alleged in his asylum application that Chinese authorities sought him for "illegal religious activities," he did not once substantiate this claim, or even repeat it, in his testimony. Quite the opposite, Lin testified that his temple had not experienced any problems with authorities until assisting the escapee.

**[8]** Moreover, "[o]ur caselaw characterizes persecution as an extreme concept, marked by the infliction of suffering or harm . . . in a way regarded as offensive." *Li v. Ashcroft*, 356 F.3d 1153, 1158 (9th Cir. 2004) (en banc) (internal quotation marks omitted). Here, substantial evidence supports the IJ's conclusion that Lin would not be subject to persecution because Lin did not provide any evidence that Chinese authorities would act in such an "extreme" way as to rise to the level of persecution. He testified merely that some members of his temple had been arrested for their involvement, which hardly establishes persecution. *See Gu v. Gonzales*, 454 F.3d 1014, 1019-21 (9th Cir. 2006) (holding that brief detention, beating, and interrogation did not compel a finding of persecution). Therefore, the record does not compel the conclusion that the IJ erred in denying Lin's request for withholding of removal.

B

**[9]** To qualify for CAT protection, an alien must show a likelihood that he would be tortured if removed to his country of origin. 8 C.F.R. § 208.16(c)(2); *Tamang*, 598 F.3d at 1095. The IJ held that Lin had not established he would likely be tortured. We are satisfied that substantial evidence supports the IJ's decision.

**[10]** "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." *Al-Saher v. INS*, 268 F.3d 1143, 1147 (9th Cir. 2001) (quoting 8 C.F.R. § 208.18(a)(2)). It "does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions." *Id.* (quoting 8 C.F.R. § 208.18(a)(3)). Here, the actions of Chinese authorities suggest, at most, that Lin may be subject to interrogation or punishment for his assistance to the escapee. Nothing in the record suggests that Lin is likely to be tortured by Chinese authorities. Therefore, the record does not compel the conclusion that the IJ erred in denying Lin's request for CAT relief.

IV

The petition for review is **GRANTED** in part and **DENIED** in part, and the case is **REMANDED** for consideration of Lin's asylum application on the merits.

---

O'SCANNLAIN, Circuit Judge, specially concurring:

I join in the court's decision because it faithfully applies our precedent in *Khunaverdiants v. Mukasey*, 548 F.3d 760, 765-66 (9th Cir. 2008), which is an extension of *Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007) (per curiam), *reh'g en banc denied sub nom. Ramadan v. Keisler*, 504 F.3d

973 (9th Cir. 2007), to conclude that the REAL ID Act of 2005 provides us with jurisdiction to review the IJ's determination that Lin did not apply for asylum within one year of arriving in the United States. I continue to believe, however, that *Ramadan* was wrongly decided. *Dhital v. Mukasey*, 532 F.3d 1044, 1052-53 (9th Cir. 2008) (per curiam) (O'Scannlain, J., specially concurring); *Ramadan v. Keisler*, 504 F.3d at 973-78 (O'Scannlain, J., dissenting from denial of rehearing en banc).

*Ramadan* holds that, for purposes of assessing our jurisdiction under the REAL ID Act, "questions of law" include "not only 'pure' issues of statutory interpretation, but also application of law to undisputed facts, sometimes referred to as mixed questions of law and fact." *Id.* at 648. By now, nine other courts of appeals have rejected such view. *Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 153-54 (2d Cir. 2006); *Sukwanputra v. Gonzales*, 434 F.3d 627, 635 (3d Cir. 2006); *Gomis v. Holder*, 571 F.3d 353, 359 (4th Cir. 2009); *Zhu v. Gonzales*, 493 F.3d 588, 596 n.31 (5th Cir. 2007); *Almuhtaseb v. Gonzales*, 453 F.3d 743, 747-48 (6th Cir. 2006); *Viracacha v. Mukasey*, 518 F.3d 511, 515-16 (7th Cir. 2008); *Ignatova v. Gonzales*, 430 F.3d 1209, 1214 (8th Cir. 2005); *Ferry v. Gonzales*, 457 F.3d 1117, 1130 (10th Cir. 2006); *Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 956-57 (11th Cir. 2005) (per curiam).

Despite the unanimity of our sister circuits in rejecting *Ramadan*, we have extended it at least six times to other settings, including the "extraordinary circumstances" exception to the asylum application deadline, *Husyey v. Mukasey*, 528 F.3d 1172, 1178-79 (9th Cir. 2008), the "reasonable period" filing requirement for the changed circumstances exception to the asylum application deadline, *Taslimi v. Holder*, 590 F.3d 981, 984-86 (9th Cir. 2010), the "due diligence" requirement to reopen an immigration case, *Ghahremani v. Gonzales*, 498 F.3d 993, 998-99 (9th Cir. 2007), the threshold requirements for special rule cancellation in the Nicaraguan Adjustment

and Central American Relief Act, *Barrios v. Holder*, 581 F.3d 849, 857 (9th Cir. 2009), the application of the definition of "terrorist organization" in the terrorist bar to asylum, *Khan v. Holder*, 584 F.3d 773, 779-80 (9th Cir. 2009), and the determination of whether an alien applied for asylum within one year of arriving in the United States, *Khunaverdiants*, 548 F.3d at 765-66. On the other hand, we have refused to extend *Ramadan* to the "exceptional and extremely unusual hardship" inquiry for cancellation of removal. *Mendez-Castro v. Mukasey*, 552 F.3d 975, 980-81 (9th Cir. 2009).

I continue to believe that we have seized jurisdiction over a multitude of petitions for review that Congress has placed beyond our reach through unambiguous statutory language. *Khunaverdiants*, the precedent that directly controls the outcome of this case, demonstrates how far we have strayed from the text of the INA. In *Khunaverdiants*, we extended *Ramadan* to determinations involving factual uncertainty, as long as the petitioner meets the statutory standard under any view of the facts. 548 F.3d at 766. In so doing, we have stuck our noses further into disputes in which Congress has forbidden us a role. Nevertheless, because *Ramadan* and *Khunaverdiants* are binding on me, I join the court's decision.