**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIA LOPEZ-BIRRUETA,

*Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

*Respondent.*

No. 10-70128

B.I.A. No.
A079-748-289

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
January 13, 2011—Seattle, Washington

Filed February 14, 2011

Before: Susan P. Graber and Milan D. Smith, Jr.,
Circuit Judges, and Charles R. Breyer,* District Judge.

Opinion by Judge Graber

---

*The Honorable Charles R. Breyer, United States District Judge for the
District of Northern California, sitting by designation.

---

**COUNSEL**

S. Matt Adams, Northwest Immigrant Rights Project, Seattle, Washington, for the petitioner.

M. Jocelyn Lopez Wright, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent.

Loni A. Mahanta, Crowell & Moring LLP, San Francisco, California, for the amicus curiae.

---

**OPINION**

GRABER, Circuit Judge:

Petitioner Maria Lopez-Birrueta petitions for review of the Board of Immigration Appeals' ("BIA") denial of special-rule cancellation of removal under the Violence Against Women Act of 1994 ("VAWA"). The BIA held that, although Petitioner's children were mistreated by their lawful-permanent-resident father, that mistreatment did not rise to the level of "battery" under 8 U.S.C. § 1229b(b)(2)(A). We disagree. Accordingly, we grant the petition and remand.

FACTUAL AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Mexico. She entered the United States without inspection in 1994 at the age of 14. In

2002, the government served her with a notice to appear. She conceded removability but applied for special-rule cancellation of removal under 8 U.S.C. § 1229b(b)(2)(A). To qualify, an alien must demonstrate (1) the existence of battery or extreme cruelty, (2) physical presence, (3) good moral character, (4) not being inadmissible for certain specified reasons, and (5) extreme hardship. *Id.* Regarding the first requirement, Petitioner sought to demonstrate that she "is the parent of a child of an alien who is . . . a lawful permanent resident and the child has been battered or subjected to extreme cruelty by such permanent resident parent." *Id.* § 1229b(b)(2)(A)(i)(II).

At a merits hearing in 2008, Petitioner testified as follows. After arriving in the United States, and still at the age of 14, Petitioner began a sexual relationship with Gill Campos, who was then 36 years old. Campos is a legal permanent resident of the United States.

Petitioner and Campos had two children together. At age 16, Petitioner gave birth to E—. At age 18, she gave birth to G—. Petitioner and Campos lived together while the children were very young.

During that time, Campos repeatedly threatened Petitioner, insulted her, prohibited her from talking with others, acted aggressively toward her, and threatened to alert immigration officials if Petitioner disobeyed his orders. While they lived together, Campos was not a loving father. He was violent toward his children, yelled at them, and often took them for rides in his car when he was drunk.

Petitioner described one incident in detail. In front of his "drunken friends," Campos struck E—, then 3 years old, three times on the legs with a stick that was 24 inches long and one-half inch in diameter. The strikes caused red welts to appear on E—'s legs, which Petitioner treated with ointment and ice. That same form of beating occurred two to three times a week. Campos subjected G— to the same mistreatment.

Asked why, Petitioner responded that Campos "probably want[ed] to control me through the children."

Twice, Petitioner left Campos but, both times, she returned after Campos convinced her that he had changed. Petitioner left for good in 1999 and moved to Yakima, Washington, with her children. Since Petitioner left, the children have visited Campos for one or two months at a time, and once for almost a year. Campos no longer strikes the children.

Both children testified at the hearing. At the time, E— was 12 years old, and G— was 11 years old. E— testified that he has not had any problems with his father in the past few years and that, although he did not love his father when he was younger, he loves him now. He remembers his father striking him, "for no reason," with a tree branch and with his hand. G— testified that he remembers that his father would beat him and E— with a stick, on the legs. When his father came home, G— was scared and hid to "try[ ] to get away." But he no longer feels that way about his father.

In a written decision, an immigration judge ("IJ") denied cancellation of removal. The IJ expressly found Petitioner credible but found that she failed to establish that the children had been "battered" or subjected to "extreme cruelty" under the statute. Because the IJ held that Petitioner did not meet the statutory requirement of battery or extreme cruelty, he did not reach any of the other statutory requirements for relief.

Citing *In re Burbano*, 20 I. & N. Dec. 872, 874 (B.I.A. 1994), the BIA adopted and affirmed the IJ's decision. The BIA also added its own summary as to why no battery or extreme cruelty occurred. Petitioner timely petitions for review.

## STANDARDS OF REVIEW

"We review the BIA's legal determinations de novo and its factual findings for substantial evidence." *Kyong Ho Shin v. Holder*, 607 F.3d 1213, 1216 (9th Cir. 2010).

## DISCUSSION

A.  *Sources of Law*

The statute provides several categories of aliens who satisfy the "battery or extreme cruelty" requirement. The alien must demonstrate that:

> (I) the alien has been battered or subjected to extreme cruelty by a spouse or parent who is or was a United States citizen (or is the parent of a child of a United States citizen and the child has been battered or subjected to extreme cruelty by such citizen parent);

> (II) the alien has been battered or subjected to extreme cruelty by a spouse or parent who is or was a lawful permanent resident (or is the parent of a child of an alien who is or was a lawful permanent resident and the child has been battered or subjected to extreme cruelty by such permanent resident parent); or

> (III) the alien has been battered or subjected to extreme cruelty by a United States citizen or lawful permanent resident whom the alien intended to marry, but whose marriage is not legitimate because of that United States citizen's or lawful permanent resident's bigamy[.]

8 U.S.C. § 1229b(b)(2)(A)(i).

**[1]** Because Petitioner and Campos never married (legally or bigamously), Petitioner cannot claim protection under VAWA for Campos' mistreatment *of her*. Instead, Petitioner sought to demonstrate that she fell within the category protected by the parenthetical in subsection (II), that she "is the parent of a child of an alien who is . . . a lawful permanent

resident and the child has been battered or subjected to extreme cruelty by such permanent resident parent." *Id.* § 1229b(b)(2)(A)(i)(II). None of the other categories applies.

**[2]** The statute does not define the phrase "has been battered or subjected to extreme cruelty." But the agency has promulgated a regulation at 8 C.F.R. § 204.2 that pertains to the topic. Although we ultimately agree with the BIA and the parties that the regulation's definitions of "battery or extreme cruelty" apply, some explanation is required.

The first seven subsections of the regulation pertain to a particular type of petitioner. For instance, subsection (a) is entitled "Petition for a spouse" and contains implementing regulations for petitions filed by a spouse of a citizen or legal permanent resident. Relevant here, subsection (c) is entitled "Self-petition by spouse of abusive citizen or lawful permanent resident," and subsection (e) is entitled "Self-petition by child of abusive citizen or lawful permanent resident." Both subsections (c) and (e) describe the requirements for special-rule cancellation of removal under VAWA, and both subsections contain a definition of "battery or extreme cruelty." Except for their respective final sentences, the two definitions are identical:

> Battery or extreme cruelty. For the purpose of this chapter, the phrase "was battered by or was the subject of extreme cruelty" includes, but is not limited to, being the victim of any act or threatened act of violence, including any forceful detention, which results or threatens to result in physical or mental injury. Psychological or sexual abuse or exploitation, including rape, molestation, incest (if the victim is a minor), or forced prostitution shall be considered acts of violence. Other abusive actions may also be acts of violence under certain circumstances, including acts that, in and of themselves, may not initially

> appear violent but that are a part of an overall pattern of violence.

8 C.F.R. § 204.2(c)(1)(vi), (e)(1)(vi). The final sentence in the two definitions varies depending on whether the petitioner is a spouse or child. The subsection concerning a petition for a spouse states: "The qualifying abuse must have been committed by the citizen or lawful permanent resident spouse, must have been perpetrated against the self-petitioner or the self-petitioner's child, and must have taken place during the self-petitioner's marriage to the abuser." *Id.* § 204.2(c)(1)(vi). The subsection concerning a petition for a child states: "The qualifying abuse must have been committed by the citizen or lawful permanent resident parent, must have been perpetrated against the self-petitioner, and must have taken place while the self-petitioner was residing with the abuser." *Id.* § 204.2(e)(1)(vi).

We have two difficulties with the regulation's definitions of "battery or extreme cruelty." First, the definitions give the meaning of the phrase "was battered by or was the subject of extreme cruelty." But that phrase appears nowhere in the statute or elsewhere in the regulation. Both the statute and the regulation use the verb form "has been," instead of the definitions' formulation "was." Neither the parties nor we attribute any significance to this difference, though. The agency plainly intended to define the phrase as it appears in the regulation and the statute.

**[3]** Second, and slightly more troubling, is that the definitions do not cover Petitioner's situation. Petitioner filed neither a petition from an abusive *spouse*, covered by the definition at § 204.2(c)(1)(vi), nor a petition from a *child*, covered by the definition at § 204.2(e)(1)(vi). Petitioner is the non-married parent of a child abused by the other parent. Even though the *statute* covers Petitioner's situation, it appears that the agency failed to promulgate regulations specifically covering that situation. Both the parties and the BIA

assumed that the relevant part of the definitions, block-quoted above, applies to Petitioner's circumstances, even though the definitions on their face do not apply. We agree that the BIA permissibly extended the use of the definitions here. There is no indication in the statute or elsewhere that a different definition of battery or extreme cruelty should apply depending on the marital status of the petitioner.

B.  *Battery Under VAWA*

[4] "Congress's goal in enacting VAWA was to eliminate barriers to women leaving abusive relationships." *Hernandez v. Ashcroft*, 345 F.3d 824, 841 (9th Cir. 2003). The statute "was a generous enactment, intended to ameliorate the impact of harsh provisions of immigration law on abused women."[1] *Id.* at 840. Accordingly, when interpreting this statute, we have "adhere[d] to the general rule of construction that when the legislature enacts an ameliorative rule designed to forestall harsh results, the rule will be interpreted and applied in an ameliorative fashion." *Id.* (internal quotation marks omitted).

[5] "The text of the statute reveals that Congress distinguished between 'battery' and 'extreme cruelty,' reserving the term extreme cruelty for something other than physical assault, presumably actions in some way involving mental or psychological cruelty." *Id.* at 838. "Under [8 C.F.R. § 204.2(c)(1)(vi)], any act of physical abuse is deemed to constitute domestic violence without further inquiry, while 'extreme cruelty' describes all other manifestations of domestic violence." *Id.* at 840. Relevant here, the regulation states that battery "includes, but is not limited to, . . . any act or threatened act of violence, including any forceful detention,

---

[1]As originally enacted, special-rule cancellation of removal under VAWA was codified at a different section of the United States Code. We agree with the parties that, because there is no relevant difference in this case between the current statute and its predecessor, the discussion in Hernandez applies with equal force.

which results or threatens to result in physical or mental injury." 8 C.F.R. § 204.2(c)(1)(vi), (e)(1)(vi).

We acknowledge that those sources of law are somewhat open-ended: The regulation defines some conduct that qualifies as battery but leaves open the full scope of what "battery" encompasses and, in *Hernandez*, we did not elaborate on what constitutes an "act of physical abuse." But those sources provide more than adequate definitions for the challenged conduct here.

[6] Campos struck his children with a stick two or three times a week, when they were 2 and 3 years old, in front of his "drunken friends," for no reason at all (that is, not as punishment), causing red welts that required home medical treatment of ointment and ice and causing his children to fear him. We are compelled to conclude that those regular, arbitrary beatings causing injury constituted an "act of physical abuse," *Hernandez*, 345 F.3d at 840, or an "act of violence . . . which results . . . in physical . . . injury," 8 C.F.R. § 204.2(c)(1)(vi), (e)(1)(vi). We therefore hold that the BIA erred in concluding otherwise.[2]

C.  *The BIA's Legal Errors*

The BIA made several errors in its legal analysis. The BIA adopted the IJ's reasoning in full, citing *Burbano*. "When, as here, the BIA adopts the IJ's decision citing *Matter of Burbano*, we review the IJ's decision as if it were the BIA's."

---

[2]There is some uncertainty about the correct standard of review, because we gave arguably conflicting indicators in *Hernandez*. *See* 345 F.3d at 834 (holding that "battery is clearly a factual determination, readily resolved by the application of a legal standard defining battery to the facts in question"); *id.* at 840-41 (announcing our "hold[ing]" that the petitioner was subject to extreme cruelty, without reference to the "substantial evidence" standard). We need not resolve that uncertainty. Even if we review for substantial evidence the BIA's conclusion that no battery occurred here, substantial evidence does not support the BIA's conclusion.

*Cortez-Pineda v. Holder*, 610 F.3d 1118, 1121 (9th Cir. 2010). The IJ's errors, described below, therefore apply to the BIA's decision as well.

**[7]** First, the IJ held that "[t]he regulatory definition of 'battery or extreme cruelty' requires a heightened level of violence that 'results or threatens to result in physical or mental injury.' " (Quoting 8 C.F.R. § 204.2(c)(1)(vi).) But the regulation states that battery "*includes, but is not limited to*" an act of violence resulting in injury. 8 C.F.R. § 204.2(c)(1)(vi) (emphasis added). The definition does not *require* that the violence be "heightened" or result in injury, though physically injurious acts of violence qualify per se as battery.

**[8]** Second, and perhaps most egregious, the IJ turned to California's criminal-law definition of "battery" and its definition of "injury" for certain sentencing purposes. From that premise, the IJ held that the term "injury" in the federal regulation "means 'any physical injury which requires professional medical treatment.' " (Quoting Cal. Penal Code § 243(f)(5)). As an initial matter, nothing in the *federal* statute suggests that the acts required to constitute battery depend on *state* law. Given the strong uniformity sought by Congress in the area of immigration law and its remedial purpose in enacting VAWA, we doubt that acts of violence would qualify (or fail to qualify) as battery depending on locale.

In any event, examining the cited definitions in context reveals the fatal flaws of the IJ's analysis here. The definition of "injury" found in California Penal Code section 243(f)(5) has a very limited application. It applies only if a state criminal defendant battered certain emergency workers (such as an ambulance driver or lifeguard) such that the battery caused an "injury." *Id.* § 243(c)(1). If the battery caused an "injury," then the defendant is subject to increased criminal penalties. *Id.* It is wholly illogical to reason that Congress intended to import a narrow, specialized state-law sentencing enhancement definition as the proper definition of "injury" in the

immigration context. It is completely arbitrary that California chose to use a generic term "injury" in its sentencing-enhancement statute and then provide a definition for that term. The fact that the common term "injury" is used in both the California sentencing-enhancement statute and the federal immigration regulations is happenstance.

[9] Finally,[3] the BIA also suggested (as does the government on appeal) that no battery occurred for reasons that, while facially appealing, are in fact irrelevant. For example, it is true that the children now love their father and that he no longer beats them. But Congress chose to provide protection for anyone who "*has been*" battered while residing with the abuser. Petitioner and the amicus point out that, in the context of an abusive relationship, the abuser may re-start the abuse when he or she once again has that opportunity, for instance, if Petitioner is removed and the children move in with their father again and, if they wish to remain in the United States, have no choice but to remain with their father. Congress chose to prevent that opportunity by granting relief to those who *had been* subjected to battery. The BIA's suggestion that no battery occurred *in the past* because of the state of the relationship *today* is irrelevant under the plain text of the statute.[4]

---

[3]We also note that the IJ improperly looked to an unpublished decision by this court and an unpublished decision by the BIA. This court's decision was issued in 2006 and therefore may not be cited for any reason (other than reasons plainly inapplicable here). 9th Cir. R. 36-3(c). Similarly, the BIA decision states, as the very first line "** THIS IS AN UNPUBLISHED DECISION THAT CANNOT BE CITED **."

[4]We note that the statute's use of the term "child" might suggest a time limitation on a parent's ability to seek relief under VAWA. The text of the statute suggests that, at the time of application, the petitioner's child must still be a minor. But because Petitioner's children here were minors at the time of application (and are still minors), we have no occasion to consider that issue.

## CONCLUSION

**[10]** We hold that Petitioner demonstrated that her children had been battered by Campos within the meaning of 8 U.S.C. § 1229b(b)(2)(A)(i)(II). We therefore grant the petition. The BIA also held that Petitioner failed to establish that the children had been subjected to extreme cruelty. Because we grant the petition on other grounds, we do not reach the issue of extreme cruelty.

The BIA did not reach the other four statutory requirements for relief. We remand for consideration of those requirements and any other issues not addressed by this opinion.

**Petition GRANTED; case REMANDED.**