**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| NIRMAL SINGH, | No. 07-73429 |
| Petitioner, | Agency No. A079-578-051 |
| v. | |
| ERIC H. HOLDER JR., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 13, 2011
San Francisco, California

Before: SCHROEDER, RIPPLE,[**] and GRABER, Circuit Judges.

Petitioner Nirmal Singh asks us to review an order of the Board of

Immigration Appeals ("BIA") returning him to India. We review de novo the

BIA's legal conclusions, and we review its factual findings for substantial

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Kenneth F. Ripple, Senior Circuit Judge for the United States Court of Appeals for the Seventh Circuit, sitting by designation.

evidence.  Lopez-Birrueta v. Holder, 633 F.3d 1211, 1214 (9th Cir. 2011).  We

dismiss in part and deny in part the petition for review.

1. Because our disposition in this case turns on the adverse credibility

determination made by the immigration judge ("IJ") and affirmed by the BIA, we

begin with that issue.  This case predates the REAL ID Act of 2005, so we apply

pre-REAL ID Act rules.  Rizk v. Holder, 629 F.3d 1083, 1087 n.2 (9th Cir. 2011).

Because the BIA adopted the IJ's findings of fact, which include the IJ's adverse

credibility determination, we review the IJ's decision for substantial evidence.  Id.

The IJ's credibility determination is "'conclusive unless any reasonable adjudicator

would be compelled to conclude to the contrary.'"  Id. (quoting 8 U.S.C.

§ 1252(b)(4)(B)).  We therefore must uphold the IJ's credibility determination "so

long as one of the identified grounds is supported by substantial evidence and goes

to the heart of [Petitioner's] claim."  Id. (alteration omitted) (emphasis added)

(internal quotation marks omitted).  "[E]ven minor inconsistencies going to the

heart of [Petitioner's] claim may, when considered collectively, deprive the claim

of the requisite ring of truth, thereby supplying substantial evidence that will

sustain the IJ's adverse credibility determination."  Id. at 1088 (alteration omitted)

(internal quotation marks omitted).

2

A.  The IJ gave many reasons why she did not believe Petitioner,[1] which include her finding that Petitioner "was often nonresponsive and evasive."  The adverse credibility determination therefore rests, in part, on Petitioner's demeanor, to which we give "special deference."  Jibril v. Gonzales, 423 F.3d 1129, 1137 (9th Cir. 2005).  When Petitioner's testimony is read as a whole, the IJ's determination of evasiveness and nonresponsiveness is evidenced.  When posed questions, Petitioner often asked for the question to be repeated.  This could have been due to interpretation problems, but Petitioner never claimed interpretation problems.  Additionally, Petitioner's testimony with respect to how many times he was beaten during his second arrest and his answer as to why Gurjit had been arrested in 1997 could reasonably be interpreted as nonresponsive and evasive.  Because the record

---

[1]Because we must uphold the adverse credibility finding if substantial evidence supports even one of the IJ's reasons, we need not and do not address every reason given by the IJ.  The reasons discussed in text suffice even if none of the other reasons is supported by substantial evidence.

The dissent discusses at length the government's chosen emphasis at oral argument.  Dissent at 4-7.  The dissent interprets the government's decision to focus on two of the IJ's reasons as a concession that the IJ's other reasons lack merit.  Dissent at 7 n.3.  We do not.  We have recognized that "[a]n admission that reasonable minds could differ . . . is not a concession that the opposing party is correct."  Stoot v. City of Everett, 582 F.3d 910, 919 n.9 (9th Cir. 2009), cert. denied, 130 S. Ct. 2343 (2010).  Moreover, the government clearly does not concede the broader point that the IJ's adverse credibility determination lacks substantial evidence.  Therefore, our task is to review the agency's decision in its entirety and, in doing so, we are not limited to the reasons discussed at argument.

does not compel us to conclude that the IJ erred when she disbelieved Petitioner, we must uphold the adverse credibility finding.

B.  The IJ disbelieved Petitioner because, in addition, the two country reports in the record directly contradicted his testimony.  Petitioner testified that the police arrested, interrogated, and beat him on three separate occasions over three years solely because Petitioner was friends with a former classmate, Gurjit Singh, who participated in the All-India Sikh Student Federation (the "Federation").  Two unbiased country reports cast doubt on Petitioner's testimony.  One of those country reports, published by the British Home Office, states that, "[t]here are no reports that members of [the Federation] are specifically targeted or discriminated against as a result of their membership."  And the other country report, published by the U.S. Department of State, states that "[b]y mid-1993, few if any terrorist groups were operating in the Punjab," the Indian state where Petitioner claims to have been persecuted.  The report further states that "the [Federation] . . renounce[d] the use of force."

Although the State Department report suggests that some individual members of the Federation might still support violent measures, Petitioner was unable to identify anything that his classmate had done that had attracted the attention of the police.  To the contrary, Petitioner testified that Singh "could not

4

be a militant." Petitioner's reasoning therefore boils down to a suggestion that, merely by being a member of the Federation, Singh had become a target. The IJ correctly observed that the country reports directly contradict that suggestion.

IJs are entitled to rely on information contained in the unbiased country reports when rejecting a petitioner's asylum claim. Testimony that is implausible in light of the background evidence can support an adverse credibility finding. Jibril, 423 F.3d at 1135. In particular, "a finding made by an IJ that a petitioner's testimony is implausible given the evidence in a Country Report or other objective evidence in the record is accorded deference." Id. Accordingly, for this reason, too, we hold that substantial evidence supports the adverse credibility determination.

2. We lack jurisdiction to review the BIA's determination that Petitioner filed his asylum application too late. Under 8 U.S.C. § 1158(a)(2)(B), in the absence of changed or otherwise extraordinary circumstances, Petitioner must prove by clear and convincing evidence that he filed his asylum application within one year after his most recent arrival in the United States. The IJ determined that Petitioner had failed to carry that burden. The BIA agreed. Under 8 U.S.C. § 1158(a)(3), "[n]o court shall have jurisdiction to review any determination" under § 1158(a)(2).

Although we retain jurisdiction to consider "constitutional claims and questions of law" notwithstanding § 1158(a)(3), Ramdan v. Gonzales, 479 F.3d 646, 650 (9th Cir. 2007) (per curiam) (internal quotation marks omitted), in these circumstances, whether Petitioner has established the timeliness of his application by clear and convincing evidence is not a question that we may review. In Khunaverdiants v. Mukasey, 548 F.3d 760 (9th Cir. 2008), we held that we have jurisdiction to review the BIA's timeliness determination if the precise question presented to us amounts to "a mixed question of law and fact." Id. at 765 (internal quotation marks omitted). Quoting Pullman-Standard v. Swint, 456 U.S. 273, 289 n.19 (1982), we defined such a question to be one "'in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard.'" Khunaverdiants, 548 F.3d at 765. Accordingly, we held that we could review the BIA's timeliness decisions when "any view of the historical facts necessarily establishes that [the petitioner] filed his asylum application within one year of his arrival." Id. (emphasis added); see also Lin v. Holder, 610 F.3d 1093, 1096 (9th Cir. 2010) (per curiam) (reaching the same conclusion because the facts were "indistinguishable" from Khunaverdiants).

In both Khunaverdiants, 548 F.3d at 766, and Lin, 610 F.3d at 1096, the IJ accepted the petitioners' testimony as credible and, under any possible view of that

6

crucial testimony, the facts necessarily established timely filings. Here, by contrast, the IJ and the BIA both made an adverse credibility finding that, for the reasons explained above, substantial evidence supports. We therefore distinguish Khunaverdiants and Lin from the facts here. Because Petitioner failed to provide credible testimony that would compel a finding that he filed his asylum application in time, we hold that § 1158(a)(3) deprives us of jurisdiction to review the BIA's timeliness determination.

Finally, we observe that, even if Petitioner had filed a timely asylum application, the IJ specifically held also that Petitioner failed to show entitlement to asylum on the merits because he was not a credible witness as to the alleged persecution on account of a protected ground. The BIA upheld all of the IJ's findings, including adverse credibility. Accordingly, even if we had jurisdiction to consider the merits of Petitioner's asylum claim, we would be compelled to uphold the BIA's denial of the claim because substantial evidence supports the adverse credibility determination.

3. Here, for the first time, Petitioner argues in the alternative that changed circumstances should excuse his tardy application under 8 U.S.C. § 1158(a)(2)(D). He further argues that the BIA denied him due process by failing to consider whether § 1158(a)(2)(D) entitles him to asylum. But Petitioner never asked the

7

BIA to do so. Instead, he steadfastly argued that he filed his application in time. Because Petitioner failed to exhaust his alternative argument, 8 U.S.C. § 1252(d)(1) deprives us of jurisdiction to consider it. And, because we do not allow petitioners to avoid the statutory exhaustion requirement merely by casting a neglected claim in the terms of a due process violation, we may not consider Petitioner's parallel due process claim, either. Liu v. Waters, 55 F.3d 421, 426 (9th Cir. 1995).

4. We deny review of Petitioner's claims for withholding of removal and relief under the United Nations Convention Against Torture ("CAT"). Because Petitioner produced little more than his incredible testimony, substantial evidence supports the BIA's decisions that Petitioner failed to establish a clear probability of persecution, as required for withholding of removal, and that he similarly failed to establish that he more likely than not will be tortured if returned to India, as required for CAT relief. Khup v. Ashcroft, 376 F.3d 898, 905-08 (9th Cir. 2004).

Petition DISMISSED in part and DENIED in part.

Singh v. Holder, 07-73429

Ripple, Circuit Judge, dissenting:

The immigration judge ("IJ") who presided over Nirmal Singh's removal hearing concluded that he was not credible based on a number of alleged inconsistencies and other issues with his testimony and the documentary evidence. Mr. Singh has argued to this court that the issues identified by the IJ reflect a serious misapprehension of the record. The record bears out his claim with respect to several of the problems identified by the IJ. Indeed, the clarity of the record on many of these points is so persuasive that the Government--as the advocate charged with defending the IJ's opinion before this court--opened its argument with the acknowledgment that "[m]uch of what the petitioner says about the adverse credibility finding has substance." Oral Argument (9th Cir. June 13, 2011). Nevertheless, my colleagues reject Mr. Singh's challenge, and in doing so, they place more stock in the credibility determination of the IJ than even its own advocate could. In my view, the Government's concession, along with the serious problems with some of the IJ's cited bases for the credibility determination that go unmentioned in the court's opinion, should make us wary of relying on the remaining bases. For that reason, I respectfully dissent.

The standards for review of credibility determinations by the agency bear repeating. We review for substantial evidence. Kaur v. Gonzales, 418 F.3d 1061, 1064 (9th Cir. 2005). Even among other findings reviewed deferentially for substantial evidence, the credibility finding of an IJ is accorded "special deference," and reversal is warranted only where the evidence "compel[s] a contrary conclusion." Id. (alteration in original) (quotation marks omitted). Nevertheless, an IJ must support a credibility finding with specific and cogent reasons grounded in the record. Li v. Holder, 559 F.3d 1096, 1102 (9th Cir. 2009). When the IJ provides such reasons, "this court may evaluate those reasons to determine whether they are valid grounds upon which to base a finding that the applicant is not credible." Vilorio-Lopez v. INS, 852 F.2d 1137, 1142 (9th Cir. 1988).[1]

Importantly, if we conclude merely that certain of the reasons provided by the agency lack support, that does not mean necessarily that the credibility

---

[1] See also Lopez–Reyes v. INS, 79 F.3d 908, 912 (9th Cir. 1996) (reversing adverse credibility determination "based on an inaccurate reading of the record and on improper inferences"); Aguilera–Cota v. United States INS, 914 F.2d 1375, 1382 (9th Cir. 1990) (reversing the IJ's adverse credibility determination that had been based on the facts that "Aguilera's oral testimony included information not set forth in his asylum application" and that "Aguilera had no proof that the threatening note [forming the basis of his asylum claim] had been delivered").

determination must be overturned. "[S]o long as one of the identified grounds is supported by substantial evidence and goes to the heart of [the alien's] claim of persecution, we are bound to accept the IJ's adverse credibility finding." Li v. Ashcroft, 378 F.3d 959, 964 (9th Cir. 2004) (quotation marks omitted).

These highly deferential rules do not, however, relieve us of our responsibility to evaluate closely credibility determinations and assess whether they indeed are supported by the record. See, e.g., Li, 559 F.3d at 1102-07 (reversing an adverse credibility determination after examining the IJ's bases one by one and concluding that they often involved mischaracterizations of the record or translation difficulties and confusion on the part of the alien). Nor do they permit the court to affirm an adverse credibility finding, in pre-REAL ID cases such as this one,[2] unless the agency's cited reasons are "substantial and bear a legitimate nexus to the finding." Garrovillas v. INS, 156 F.3d 1010, 1013 (9th Cir. 1998) (quotation marks omitted). That is, "[a] minor inconsistency or incidental misstatement that does not go to the heart of an applicant's claim" is an insufficient basis upon which to affirm an adverse credibility determination. Lei Li v. Holder, 629 F.3d 1154, 1158 (9th Cir. 2011); see also Rizk v. Holder, 629 F.3d

_____

[2] Because Mr. Singh's claim was filed prior to May 11, 2005, the REAL ID provisions circumscribing our review of credibility are not applicable. See Kaur v. Gonzales, 418 F.3d 1061, 1064 n.1 (9th Cir. 2005).

3

1083, 1088 (9th Cir. 2011) ("[M]inor inconsistencies regarding non-material and trivial details, such as typographical errors or inconsistencies in specific dates and times that lack a close nexus to the petitioner's asserted grounds of persecution, cannot form the exclusive basis for an adverse credibility determination.").

**B.**

At argument in this case, the Government pressed only two bases as providing support for the IJ's adverse credibility finding, neither of which satisfies this court's standards. The Government first noted that, at the end of his testimony, Mr. Singh was asked to verify the identity and origin of certain record documents. At that time, he stated that a certain document was the affidavit of his mother and that he had received it by mail, sent by his father. No follow-up questions were asked and no further testimony on the issue was taken. In the opinion denying relief issued some months later, the IJ noted that Mr. Singh had presented a death certificate for his father that indicated he had died before the affidavit had been executed, so he could not have been responsible for the mailing.

The majority does not rely on this inconsistency, and I agree that to do so would be improper for two principal reasons. First, "an IJ cannot base an adverse credibility determination on a contradiction that the alien could reconcile if given a

4

chance to do so. Accordingly, the IJ must give the petitioner the opportunity to provide an explanation of an apparent inconsistency." Rizk, 629 F.3d at 1088. The record does not show that Mr. Singh was ever questioned about this inconsistency. Second, the identity of the person responsible for mailing an affidavit written years after Mr. Singh fled India, sent for litigation and principally for the purpose of establishing when he left India, cannot be said to "go to the heart of [Mr. Singh's] claim," Lei Li, 629 F.3d at 1158. "An inconsistency goes to the heart of a claim if it concerns events central to petitioner's version of why he was persecuted and fled." Singh v. Gonzales, 439 F.3d 1100, 1108 (9th Cir. 2006). At oral argument, the Government told us that whether this discrepancy went to the heart of Mr. Singh's claim was a "borderline" case. I do not view it so generously. Mr. Singh's father's death and his mother's execution of an affidavit were completely unrelated to the events surrounding his claim of persecution; the issue of who mailed the affidavit, therefore, does not go to the heart of the claim.

The second basis asserted by the Government at oral argument in support of the IJ's credibility determination was that Mr. Singh's testimony was contradicted by the documentary evidence, specifically, the country reports. When pressed on this point, however, the Government admitted that the country reports were not so categorical as to demonstrate that any person alleging similar persecution cannot

5

be credible; instead, the Government told us that the country reports simply did not lend any support to Mr. Singh's claims. The notion that the documentary record does not enhance the petitioner's claim is a far cry from the notion that it demonstrates his incredibility. As the majority notes, Maj. op. 5, cases from this court hold that an IJ is permitted to find an alien's testimony "implausible in light of the background evidence." Jibril v. Gonzales, 423 F.3d 1129, 1135 (9th Cir. 2005) (emphasis omitted) (quotation marks omitted). However, this court also has explained that, "[w]hile an IJ may use a Department of State Report to discredit a generalized statement about a country, it may not be used to discredit specific testimony regarding a petitioner's experience." Singh, 439 F.3d at 1110 (emphasis added) (referring to the State Department country report on Indian police treatment of the Khalistani movement). The gravamen of the Government's concession to this court regarding the country reports at issue in this case is precisely the same.

In upholding the IJ's credibility determination, the majority today relies on this latter basis, notwithstanding its flaws. In addition to the claimed inconsistency with the background evidence--one of only two bases the Government was prepared to stand upon at oral argument--the majority also relies on the IJ's finding

6

that Mr. Singh was "nonresponsive and evasive." A.R. 75.[3] The IJ and the

majority support this finding first by reference to the occasional requests of Mr.

Singh, who was speaking through an interpreter, to have a particular question

repeated. When the questions were repeated, he provided an answer in every

circumstance. I am aware of no case that holds that merely asking for occasional

repetition, particularly through an interpreter, is a sufficient basis to disbelieve an

asylum applicant's testimony.

Next, the IJ and the majority each invite our attention to a place in the

transcript in which Mr. Singh is asked how many times he was beaten up during a

---

[3] The court justifies its decision to go beyond the Government's narrowing of the issues at oral argument with the statement that "our task is to review the agency's decision in its entirety and, in doing so, we are not limited to the reasons discussed at argument." Maj. op. 3 n.1. Of course, the mere fact that an issue is not discussed at oral argument does not mean it is not worthy of our attention. In this case, however, as I have noted, the Government opened its argument by explicitly narrowing the issues and acknowledging flaws in the agency's opinion.

The majority apparently believes that the Government's concession of flaws in the agency opinion and its further statement that the agency decision should be upheld, nevertheless, because "there are two bases in the finding that enjoy support in the record," Oral Argument (9th Cir. June 13, 2011), represent only that "reasonable minds could differ" on the question, Maj. op. 3 n.1 (quotation marks omitted). Although we disagree on the import of the Government's statements at oral argument, our disagreement is of little consequence. In my view, even in the court's harder look at the portions of the agency opinion effectively abandoned by the Government at argument, it has failed to identify any reason supported in the record or in the law of this circuit to hold that the adverse credibility determination is supported by substantial evidence.

7

particular arrest, and Mr. Singh appears confused.  He asks whether the question refers to just the second arrest, or a total among all arrests.  The exchange is interrupted by the IJ's stopping testimony for a tape change.  When, back on the record, his attorney directly tells him to "just answer about the second arrest," Mr. Singh gives a clear and unequivocal answer that is consistent with the remainder of his testimony.  A.R. 184.  Again, I see nothing in this exchange to support the conclusion that Mr. Singh was evasive or nonresponsive and therefore incredible.

Finally, the IJ and the majority reference a question by the Government's attorney regarding "why Gurjit had been arrested in 1997."  Maj. op. 3.  The Government asked Mr. Singh whether he had "ask[ed] Gurjit why the police arrested both he and you . . . in August, 1997."  A.R. 203.  When Mr. Singh responded in the affirmative, the Government asked what Gurjit had said in reply.  Mr. Singh responded, "that the police were falsely accusing both of us."  A.R. 204.  The Government pressed him further, asking, "Did he give you any reason, such as any recent activity on his part with the party or with the AI -- the AISSF as to why the police would choose August, 1997, to go after him?"  Id.  Mr. Singh asked for repetition.  In asking again about what Gurjit had said, the Government stated, "Did Gurjit say that possibly some of his recent activities might have made the

8

police come after him?" Id. Mr. Singh responded in the Government's own term-- it was "possible"--but made clear that he did not remember Gurjit saying anything to that effect. Id. He then returned to his original statement that he and Gurjit had been falsely accused of participating in the Khalistani movement. Respectfully, the record again does not demonstrate that Mr. Singh evaded a response to the Government's questions. It shows only that the Government was not satisfied with Mr. Singh's original answer and attempted to obtain a different one. Mr. Singh followed the extended question with difficulty that is obvious on the face of the record, but he maintained his original response throughout. The IJ's finding that this portion of the testimony demonstrated that Mr. Singh was evasive or nonresponsive, accepted by the majority, is simply an unreasonable reading of the transcript.[4]

Of course, as the majority acknowledges, "even minor inconsistencies going to the heart of a petitioner's claim may, when considered collectively, deprive [the] claim of the requisite ring of truth" and support an adverse credibility

---

[4] Nor can Mr. Singh be faulted for failing to identify explicitly the motivations of his persecutors. See Ali v. Ashcroft, 394 F.3d 780, 785 (9th Cir. 2005) ("We have repeatedly held that asylum applicants bear neither the unreasonable burden of establishing the exact motives of their persecutors nor the burden of showing that their persecutors were motivated solely 'on account of' one of the protected grounds." (first emphasis added)).

9

determination. <u>Rizk</u>, 629 F.3d at 1088 (alteration in original) (internal quotation marks omitted). When, however, the IJ relies on facts not supported by the evidentiary record and impermissible legal conclusions in identifying inconsistencies, there is little left to satisfy the collective analysis.

In sum, those bases for the adverse credibility determination relied upon by the majority have significant flaws, and they are insufficient to demonstrate that the IJ's finding is supported by substantial evidence. When viewed in light of the IJ's entire credibility analysis, complete with clear misstatements of the evidence of record, I cannot agree that the IJ's finding is entitled to deference. This is not simply a case where there are two plausible readings of the record, and the IJ's, although perhaps weaker, still finds the support of substantial evidence in the record. A review of the record in this case leaves me with the firm conviction that the IJ made numerous and serious errors of fact and law when arriving at the adverse credibility determination.

For that reason, I would grant the petition for review.