NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 15 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARCELO MAURICIO OVIEDO, Petitioner, v. MERRICK GARLAND, Attorney General, Respondent. | No. 18-72621 Agency No. A096-027-040 MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 11, 2021**
Las Vegas, Nevada

Before: NGUYEN and BENNETT, Circuit Judges, and HARPOOL,*** District
Judge.

Marcelo Mauricio Oviedo, a native and citizen of Chile, applied for special-

rule cancellation of removal under the Violence Against Women Act based on

alleged abuse he suffered at the hands of his second wife. The immigration judge

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

*** The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri, sitting by designation.

("IJ") determined that Oviedo's second marriage was fraudulent and for the purpose of immigration benefits and that Oviedo's testimony about that marriage and the alleged abuse was not credible. The IJ also determined that even if Oviedo was credible, he had not shown he was subject to "extreme battery." The IJ denied cancellation and Oviedo's alternative relief of voluntary departure, and the Board of Immigration Appeals ("BIA") affirmed. We have jurisdiction under 8 U.S.C. § 1252 and deny the petition.

1.  Substantial evidence supports the IJ's finding that Oviedo's second marriage was not bona fide. *See Garcia-Martinez v. Sessions*, 886 F.3d 1291, 1293 (9th Cir. 2018) ("Where, as here, the BIA agrees with the IJ's reasoning, we review both decisions."). It appears that Oviedo and his current (third) wife have been in a relationship since at least September 2005. This relationship predated and outlasted Oviedo's second marriage, during which his second wife filed an I-130, Petition for Alien Relative, on Oviedo's behalf and Oviedo filed an I-485, Application to Register Residence or Adjust Status. The record supports the IJ's conclusion that Oviedo maintained a true partnership (along with a house, financial accounts, and a child) with his current wife while legally marrying his second wife for immigration purposes. The BIA found that the IJ properly denied Oviedo special-rule cancellation based on the IJ's finding that Oviedo's testimony regarding his second marriage was not credible due to Oviedo's evasive demeanor

2

and his inability or unwillingness to explain the factual record.  The hearing transcript bears this out: he repeatedly refused to answer or stated that he did not remember the answer to basic questions about the timing and nature of his relationships, even where the answers were included in the evidence he submitted to the IJ.

2.     Substantial evidence supports the agency's finding that even if Oviedo was credible, he was not subjected to battery or extreme cruelty as required for special-rule cancellation under 8 U.S.C. § 1229b(b)(2)(A); *see Lopez-Birrueta v. Holder*, 633 F.3d 1211, 1214–15 (9th Cir. 2011) (applying definition of "battery or extreme cruelty" in 8 C.F.R. § 204.2(c)(1)(vi) to special-rule cancellation under 8 U.S.C. § 1229b(b)(2)(A)).  Oviedo alleges that his second wife was an alcoholic, insulted and yelled at him, demanded money, and threatened him with immigration consequences.  This does not rise to the level of "the extreme concept of domestic violence" in the form of "tactics of control . . . intertwined with the threat of harm in order to maintain [the second wife's] dominance through fear" or "manipulative tactics aimed at ensuring [the second wife's] dominance and control." *Hernandez v. Ashcroft*, 345 F.3d 824, 840 (9th Cir. 2003) (citation omitted).  Neither the IJ nor the BIA was required to give a clinician's report concluding that Oviedo is a domestic violence victim particular weight, and the report alone did not compel a finding of extreme cruelty.

3.    Finally, substantial evidence supports the IJ's finding, adopted by the BIA, that Oviedo per se lacks good moral character because he gave false testimony regarding his second marriage.  This finding bars eligibility for voluntary departure, which requires that the noncitizen be and have been "a person of good moral character for at least 5 years immediately preceding the alien's application."  8 U.S.C. § 1229c(b)(1)(B); *see* 8 U.S.C. § 1101(f)(6) (stating that "one who has given false testimony for the purpose of obtaining any benefits under this chapter" per se lacks good moral character).

**PETITION DENIED.**